## BANK OF FORSYTH *v.* GAMMAGE, for use.

The due and unresisted foreclosure of a chattel mortgage, followed by a regular sale of the mortgaged property under the mortgage execution, concludes the mortgagor, as to the property sold, from setting up any defenses, including usury, which he might have set up by counter-affidavit; and is also binding upon him as the head of a family, so as to estop him, as such, from setting up that a waiver of homestead contained in the mortgage was void because of alleged usury in the debt it was given to secure.

Argued October 11, — Decided November 7, 1899.

Trover.   Before Judge Clark.   City court of Forsyth.   July term, 1899.

*R. L. Berner* and *Bloodworth & Rutherford*, for plaintiff in error.   *Stone & Williamson*, contra.

LEWIS, J.   N. H. Gammage gave to the Bank of Forsyth a mortgage on certain realty and personalty to secure a loan of money, and in it waived all right to homestead and exemption. The bank foreclosed this mortgage on the personalty therein described, by making the usual affidavit as required by statute, upon which a mortgage fi. fa. issued, and was duly levied upon a horse and mule embraced in the mortgage.   To this action no defense by affidavit of illegality or otherwise was made by the defendant, who had full knowledge of the proceeding. Pending the levy the defendant, as the head of a family consisting of his wife and minor children, applied for a homestead and exemption in his property, including that embraced in the levy of the mortgage fi. fa.   The application was pending at the time of the sale, and it was announced at the sale that whoever purchased would buy subject to the homestead.   Nothing was said indicating any defense to the foreclosure, or any

reason why the property was not subject to the debt. The property was bought in by the plaintiff in fi. fa. The ordinary afterwards granted the homestead and exemption applied for, and the defendant, as the head of his family, brought an action of trover against the bank to recover the property sold. The case was tried before the judge of the city court of Forsyth without the intervention of a jury, and a judgment was rendered in favor of the plaintiff in the trover case. Whereupon the bank moved for a new trial, and excepts to the judgment of the court overruling its motion. It appears from the record that the judgment of the trial judge was based upon the idea that the debt secured by the mortgage was tainted with usury, and that therefore the waiver of homestead in the mortgage was of no effect. There is no question that this court is committed to the proposition, that usury in a debt will defeat any waiver of homestead by the debtor. It is equally true that when such a debt is reduced to judgment upon which final process is issued for its enforcement, without any plea or defense of usury filed thereto, the judgment is binding upon the debtor, and estops him, even as the head of a family, from setting up that his waiver of homestead was void because of alleged usury in the debt. *McLaws* v. *Moore*, 83 *Ga.* 177 ; *Stewart* v. *Stisher*, 83 *Ga.* 300 ; *Lowry* v. *Parker*, 83 *Ga.* 343; *Barfield* v. *Jefferson*, 84 *Ga.* 609. This is not a case where a general judgment was obtained against a defendant, nor where there had been any adjudication by a court touching the question of usury. The question then arises, as to whether the process issued upon the foreclosure of a mortgage on personalty ever becomes final between the parties where there has been no defense or resistance by the defendant to the foreclosure proceedings. When a chattel mortgage is given, the statute prescribes a certain method by which the mortgagee may assert and enforce his lien. It is a summary proceeding instituted by an affidavit of the plaintiff, prescribed by statute, upon which a summary process issues to be levied upon the personalty described in the mortgage. The law also prescribes a remedy for the defendant in the event he wishes to avail himself of any defense to the proceeding. If he files his counter-

affidavit setting up a legal defense, the fi. fa. then simply becomes and remains mesne process until the issue thus made is finally determined.   When, however, no such defense is filed, and no resistance whatever is made to the proceedings, we think the process, after a fair, regular, and legal sale of property thereunder, should be treated, as to the property seized, as final and conclusive between the parties, especially as to any defenses the mortgagor had, and which he had ample opportunity of asserting.

Were the rule otherwise, then we would be met with an anomaly in the law which prescribes the particular method for the enforcement of a certain legal right, but which can never become final between the parties, unless the defendant, at his own option or discretion, sees proper to file a defense, and thus raise an issue for adjudication.   Such a rule, in the sales of personal property under mortgage foreclosure, would certainly work great wrong to purchasers at public sales; for a title that a purchaser would thus acquire would always be open, within the period of statutory limitation, to an attack by the mortgagor upon any ground of which he may have availed himself in resisting the proceedings to enforce the payment of his debt.   In the case of *Smith* v. *Green*, 34 *Ga.* 180, Lyon, J., in his opinion, treats a distress warrant as "final process of itself, under which the property of the tenant may be levied and sold to satisfaction 'as in cases of other executions'; unless the tenant shall make oath that 'the sum, or some part thereof distrained for, is not due.'"   See also *Rountree* v. *Rutherford*, 65 *Ga.* 444–8.   The same rule has been applied by the court to a foreclosure of a mortgage upon personalty.   *Dawson* v. *Garland*, 70 *Ga.* 447; *Hart* v. *Hatcher*, 71 *Ga.* 717.   In the opinion in the case last cited the court analogizes the foreclosure of a chattel mortgage to a distress warrant, and quotes and approves the language used in the case of *Rountree* v. *Rutherford*, 65 *Ga.* 444, above cited.   Again, in the *Rountree* case, Justice Jackson, in treating the subject as to when such mesne process becomes final, after advancing the idea that it is only mesne when the counter-affidavit is filed, says, " It is true that if the counter-affidavit had not been taken, the property would have

been sold under the distress, and in that case, and in one sense, might be deemed final. But it became only mesne process when arrested by the counter-affidavit, and the lien was gone." It is in the power, then, of the defendant to make the process either mesne or final, and if he elects to treat it as final, ignores a defense that he has ample opportunity of making, he should be estopped from setting it up against the purchaser after the sale.

Testimony was introduced upon the trial pro and con upon the subject of usury, but, in the above view taken of this case, it is unnecessary to consider the question as to whether or not there was any evidence showing usury in the debt.

*Judgment reversed. All the Justices concurring.*