5784.   COLLIER *v.* BLAKE.

BROYLES, J.   1. Unless an execution, issued upon the foreclosure of a chattel mortgage, be arrested by a counter-affidavit, it is final process. *Ford* v. *Fargason,* 120 *Ga.* 606 (48 S. E. 180) ; *Bank of Forsyth* v. *Gammage,* 109 *Ga.* 222 (34 S. E. 307), and cases cited. No counter-affidavit was filed in this case.

2. When an execution is levied upon mortgaged property, and a claim is interposed, the claimant can not, upon the trial of the issue, amend the claim by alleging that the mortgagor is not indebted to the mortgagee, nor will he be allowed to introduce testimony tending to show it. *Ford* v. *Fargason,* supra; *Wash* v. *Bank,* 99 *Ga.* 592 (27 S. E. 167). Consequently the court did not err in overruling the amendment offered.

3. Under the facts in this case, the doctrine of subrogation is not applicable.

4. The declarations of the mortgagor that he has paid the mortgagee are inadmissible as evidence on the trial of a claim of the mortgaged property. *Shaw* v. *McDonald*, 21 *Ga.* 395 (3).

5. The rule of court requiring the plaintiff in a claim case to tender an issue within five minutes after the case is called was repealed by the judges of the superior courts ·in convention assembled, December 19, 1911. Accordingly there is no merit in the complaint that the court erred in overruling the claimant's motion to dismiss the levy because no issue had been tendered within five minutes after the call of the case.

6. The court did not err in excluding the testimony set out in the 6th ground of the motion for a new trial. This evidence was clearly irrelevant and immaterial.

7. The evidence demanded a finding that the property was subject to the levy, and the court did not err in directing such a verdict, or in overruling the motion for a new trial.          *Judgment affirmed.*

DECIDED MAY 17, 1915.

Levy and. claim; from city court of Zebulon—Judge Dupree. April 6, 1914.

Moate executed a mortgage to Blake on a gray mare mule, a blue mare mule, and a gray horse mule, as security for a debt of $496.50 and interest. The mortgage was foreclosed for $346 principal, besides interest, the execution was levied on the gray mare mule, and J. C. Collier filed a claim to the mule levied on. On the trial of the claim case the court refused to allow the following amendment: "The claimant, J. C. Collier, amends the joined issue in this case and shows the following facts: 1st. The fi. fa. levied in the above-stated case issued upon the foreclosure of a chattel mortgage, embracing three mules therein described, which said mortgage purports to be for the purchase-money for the three mules so levied upon. The amount claimed in the mortgage note purports to be $498 and a few cents. This claimant contends, that the amount for which the mortgage and note should have been given was $286.50; that Moate, the defendant in fi. fa., being an ignorant man, unable to read, executed and delivered the note as he then thought it was for the said $286.50; that Blake so informed him and he acted on Blake's statement of that fact. The note was intended to be given for the purchase-money of one mule, namely a mule called a blue mule, that being the only mule that Moate bought from the plaintiff. Said mule was not sound and failed to come up to the representations made to Moate by Blake, and for that reason Moate within a few days carried the mule back to Blake and canceled the trade. Blake accepted the mule and promised to return the mort-

gage note. On this information claimant bought one of the gray mules embraced in the mortgage note and paid Moate the cash for it ($125), under an agreement with the defendant that he would pay it over to the plaintiff in fi. fa.; wherefore claimant insists that he is entitled to receive from plaintiff in fi. fa. the said sum of $125, or that he be subrogated to the right of the plaintiff against the mule to that amount. 2d. Claimant further insists that if as matter of fact the contract was canceled and the blue mule so purchased was returned to the plaintiff in fi. fa., then claimant should be protected in his title to the gray mule so purchased from Moate. Claimant further insists that if as matter of fact the blue mule was the only mule purchased from the plaintiff in fi. fa. and the mortgage was given to secure that debt, then, if that mule was returned to and accepted by plaintiff in fi. fa., that of itself as matter of law canceled the mortgage, and it is therefore void, null, and of no effect. If the debt was in fact only $286.50 and the plaintiff in fi. fa. overreached the defendant in fi. fa. and caused him to believe that the note he signed was for that amount, when in fact it was the amount of $486.50, that was such a fraud in law as made the mortgage void, and it can not now be enforced against the claimant or the mule now owned by the claimant, and the note should be surrendered and canceled, the defendant being uneducated and could not read, and it was not turned over to him."

After the refusal to allow the amendment, the case proceeded to trial, and the plaintiff introduced in evidence the mortgage fi. fa. and the entry of levy, and testified, that on the date of the mortgage (March 14, 1911) he sold to Moate the gray mare mule described in the mortgage, and at the same time sold to Moate a blue mare mule, which Moate worked about six months, in making a crop, and brought back and traded for another mule; that Moate promised to come back and change the paper, but never came back, and that the witness sold the blue mule that Moate returned to him. Moate testified, for the claimant, as follows: "I can not read. On the 14th of March, 1911, I executed and delivered that mortgage to Mr. Blake. I don't know the amount. I owed Blake for a mule I had bought that day. It was a blue mule. I agreed to pay him $285 for it, I think. Mr. Blake got the blue mule. I turned it back to him just before Christmas. . . I turned it back because the mule was unsound. When I turned it back we did not

make any sort of a trade. . . We just agreed to come back and have a settlement. I returned the blue mule that day. I got an old black mule for the blue mule. . . I let Mr. J. C. Collier have the gray mare mule. . . He gave me $125 for it and paid me the money. I agreed with Mr. J. C. Collier to pay the money to Mr. Blake on the mortgage. I paid $100 of it."

At the conclusion of the evidence the judge directed a verdict in favor of the plaintiff in execution. The claimant excepted to the overruling of his motion for a new trial, and to the disallowance of the amendment set out above. The grounds of the motion for a new trial, besides those alleging that the verdict was contrary to law, evidence, etc., were as follows: (4) The court erred in directing the verdict in favor of the plaintiff in fi. fa. This was error "because the claimant had established his right of conventional subrogation to at least $100 by the testimony of Moate; he proved by Moate an agreement that he would buy the mule levied on and pay $125 for it, and that Moate would carry that money to Blake, the plaintiff in fi. fa., and pay it to him on the mule debt; that Moate did carry and pay to Blake on that mule debt $100 of that money, and Blake received and still keeps that $100." (5) The court erred in overruling the claimant's motion to dismiss the levy, the motion being based on the ground that more than five minutes had elapsed and no issue had been tendered to the claimant. (6) The court "erred in sustaining the objections of the plaintiff in fi. fa. to the following question asked the witness: 'What was he really worth?' That question was asked with reference to the value of the black horse mule which plaintiff in fi. fa. claimed he had traded for the blue mule for which the mortgage was given. Claimant could have shown by the witness that the black mule was not worth more than forty or fifty dollars, and so stated to the court before the objections were sustained."

*E. C. Armistead,* for plaintiff in error. *W. H. Beck,* contra.